OSCN Found Document:IN RE: OKLAHOMA RULES OF PROFESSIONAL CONDUCT

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 







 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 IN RE: OKLAHOMA RULES OF PROFESSIONAL CONDUCT
2017 OK 52
Case Number: SCBD-3490
Decided: 06/19/2017
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2017 OK 52, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

IN RE: OKLAHOMA RULES OF PROFESSIONAL CONDUCT [5 O.S. ch. 1, app. 3-A]

ORDER GRANTING AMENDMENT TO 
RULES OF PROFESSIONAL CONDUCT

This matter comes on before this Court upon an Application to amend Rules 1.18, 3.8, 5.3, 7.1, 7.2 and 7.3 of the Oklahoma Rules of Professional Conduct, 5 O.S., ch. 1, app. 3-A, as proposed and set out in Exhibit "A" attached hereto. This Court finds that it has jurisdiction over this matter and that the Application should be granted.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED by the Court that the amendments to Rule 1.18, Rule 3.8, Rule 5.3, Rule 7.1, Rule 7.2 and Rule 7.3 of the Oklahoma Rules of Professional Conduct, 5 O.S., ch. 1, app.3-A, are hereby granted as set out in Exhibit "A" attached hereto.

DONE BY ORDER OF THE SUPREME COURT IN CONFERENCE this 19th day of June, 2017.

/S/CHIEF JUSTICE

Combs, C.J., Watt, Winchester, Edmondson, Colbert, Reif and Wyrick, JJ., concur;

Gurich, V.C.J. and Kauger, J., concur in part; dissent in part.

 

 

EXHIBIT A

Oklahoma Rules of Professional Conduct
Okla. Stat. tit. 5
ch. 1, app. 3-A
Article Client-Lawyer Relationship
Rule 1.18. Duties to Prospective Client

RULE 1.18 DUTIES TO PROSPECTIVE CLIENT

(a) A person who discusses consults with a lawyer about the possibility of forming a client-lawyer relationship with respect to a matter is a prospective client.

(b) Even when no client-lawyer relationship ensues, a lawyer who has had discussions with learned information from a prospective client shall not use or reveal that information learned in the consultation, except as Rule 1.9 would permit with respect to information of a former client.

(c) A lawyer subject to paragraph (b) shall not represent a client with interests materially adverse to those of a prospective client in the same or a substantially related matter if the lawyer received information from the prospective client that could be significantly harmful to that person in the matter, except as provided in paragraph (d). If a lawyer is disqualified from representation under this paragraph, no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in such a matter, except as provided in paragraph (d).

(d) When the lawyer has received disqualifying information as defined in paragraph (c), representation is permissible if:

(1) both the affected client and the prospective client have given informed consent, confirmed in writing, or:

(2) the lawyer who received the information took reasonable measures to avoid exposure to more disqualifying information than was reasonably necessary to determine whether to represent the prospective client; and

(i) the disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom; and

(ii) written notice is promptly given to the prospective client.

Comment

[1] Prospective clients, like clients, may disclose information to a lawyer, place documents or other property in the lawyer's custody, or rely on the lawyer's advice. A lawyer's discussions consultations with a prospective client usually are limited in time and depth and leave both the prospective client and the lawyer free (and sometimes required) to proceed no further. Hence, prospective clients should receive some but not all of the protection afforded clients.

[2] Not all persons who communicate information to a lawyer are entitled to protection under this Rule. A person becomes a prospective client by consulting with a lawyer about the possibility of forming a client-lawyer relationship with respect to a matter. Whether communications, including written, oral, or electronic communications, constitute a consultation depends on the circumstances. For example, a consultation is likely to have occurred if a lawyer, either in person or through the lawyer's advertising in any medium, specifically requests or invites the submission of information about a potential representation without clear and reasonably understandable warnings and cautionary statements that limit the lawyer's obligations, and a person provides information in response. See also Comment [4]. In contrast, a consultation does not occur if a person provides information to a lawyer in response to advertising that merely describes the lawyer's education, experience, areas of practice, and contact information, or provides legal information of general interest. A person who communicates Such a person communicates information unilaterally to a lawyer, without any reasonable expectation that the lawyer is willing to discuss the possibility of forming a client-lawyer relationship, and is thus not a "prospective client." within the meaning of paragraph (a). Moreover, a person who communicates with a lawyer for the purpose of disqualifying the lawyer is not a "prospective client."

[3] It is often necessary for a prospective client to reveal information to the lawyer during an initial consultation prior to the decision about formation of a client-lawyer relationship. The lawyer often must learn such information to determine whether there is a conflict of interest with an existing client and whether the matter is one that the lawyer is willing to undertake. Paragraph (b) prohibits the lawyer from using or revealing that information, except as permitted by Rule 1.9, even if the client or lawyer decides not to proceed with the representation. The duty exists regardless of how brief the initial conference may be.

[4] In order to avoid acquiring disqualifying information from a prospective client, a lawyer considering whether or not to undertake a new matter should limit the initial interview the initial consultation to only such information as reasonably appears necessary for that purpose. Where the information indicates that a conflict of interest or other reason for non-representation exists, the lawyer should so inform the prospective client or decline the representation. If the prospective client wishes to retain the lawyer, and if consent is possible under Rule 1.7, then consent from all affected present or former clients must be obtained before accepting the representation.

[5] A lawyer may condition conversations a consultation with a prospective client on the person's informed consent that no information disclosed during the consultation will prohibit the lawyer from representing a different client in the matter. See Rule 1.0(e) for the definition of informed consent. If the agreement expressly so provides, the prospective client may also consent to the lawyer's subsequent use of information received from the prospective client.

[6] Even in the absence of an agreement, under paragraph (c), the lawyer is not prohibited from representing a client with interests adverse to those of the prospective client in the same or a substantially related matter unless the lawyer has received from the prospective client information that could be significantly harmful if used in the matter.

[7] Under paragraph (c), the prohibition in this Rule is imputed to other lawyers as provided in Rule 1.10, but, under paragraph (d)(1), imputation may be avoided if the lawyer obtains the informed consent, confirmed in writing, of both the prospective and affected clients. In the alternative, imputation may be avoided if the conditions of paragraph (d)(2) are met and all disqualified lawyers are timely screened and written notice is promptly given to the prospective client. See Rule 1.0(k) (requirements for screening procedures). Paragraph (d)(2)(i) does not prohibit the screened lawyer from receiving a salary or partnership share established by prior independent agreement, but that lawyer may not receive compensation directly related to the matter in which the lawyer is disqualified.

[8] Notice, including a general description of the subject matter about which the lawyer was consulted, and of the screening procedures employed, generally should be given as soon as practicable after the need for screening becomes apparent.

[9] For the duty of competence of a lawyer who gives assistance on the merits of a matter to a prospective client, see Rule 1.1. For a lawyer's duties when a prospective client entrusts valuables or papers to the lawyer's care, see Rule 1.15.

 

Oklahoma Rules of Professional Conduct
Okla. Stat. tit. 5
ch. 1, app. 3-A
Article Advocate
Rule 3.8. Special Responsibilities of a Prosecutor

RULE 3.8 SPECIAL RESPONSIBILITIES OF A PROSECUTOR

The prosecutor in a criminal case shall:

(a) refrain from prosecuting a charge that the prosecutor knows is not supported by probable cause;

(b) make reasonable efforts to assure that the accused has been advised of the right to, and the procedure for obtaining, counsel and has been given reasonable opportunity to obtain counsel;

(c) not seek to obtain from an unrepresented accused a waiver of important pretrial rights, such as the right to a preliminary hearing;

(d) make timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense, and, in connection with sentencing, disclose to the defense and to the tribunal all unprivileged mitigating information known to the prosecutor, except when the prosecutor is relieved of this responsibility by a protective order of the tribunal;

(e) not subpoena a lawyer in a grand jury or other criminal proceeding to present evidence about a past or present client unless the prosecutor reasonably believes:

(1) the information sought is not protected from disclosure by any applicable privilege;

(2) the evidence sought is essential to the successful completion of an ongoing investigation or prosecution; and

(3) there is no other feasible alternative to obtain the information;

(f) except for statements that are necessary to inform the public of the nature and extent of the prosecutor's action and that serve a legitimate law enforcement purpose, refrain from making extrajudicial comments that have a substantial likelihood of heightening public condemnation of the accused and exercise reasonable care to prevent investigators, law enforcement personnel, employees or other persons assisting or associated with the prosecutor in a criminal case from making an extrajudicial statement that the prosecutor would be prohibited from making under Rule 3.6 or this Rule;

(g) The lawyer upon whom a subpoena is served shall be afforded a reasonable time to file a motion to quash compulsory process of his/her attendance. Whenever a subpoena is issued for a lawyer who then moves to quash it by invoking attorney/client privilege, the prosecutor may not press further in any proceeding for the subpoenaed lawyer's appearance as a witness until an adversary in camera hearing has resulted in a judicial ruling which resolves all the challenges advanced in the lawyer's motion to quash.

(h) When a prosecutor knows of new, credible, and material evidence creating a reasonable likelihood that a convicted defendant did not commit an offense of which the defendant was convicted, the prosecutor shall within a reasonable time:

(1) disclose that evidence to an appropriate court and prosecutorial authority in the jurisdiction where the conviction occurred, and

(2) if the judgment of conviction was entered by a court in which the prosecutor exercises prosecutorial authority,

(i) unless a court authorizes delay, make reasonable efforts to disclose that evidence to the defendant's attorney or if the defendant is not represented by counsel to the defendant, and

(ii) if the defendant is not represented by counsel, move the court in which the defendant was convicted to appoint counsel to assist the defendant concerning the evidence, and

(iii) request an appropriate authority to investigate whether the defendant was convicted of an offense that the defendant did not commit.

(i) When a prosecutor learns of clear and convincing evidence establishing that a defendant was convicted in a court in which the prosecutor exercises prosecutorial authority of an offense that the defendant did not commit, the prosecutor shall promptly notify the appropriate court and make reasonable efforts to notify the defendant's counsel and the defendant.

(j) A prosecutor's judgment, made in good faith, that the new evidence is not of such nature as to trigger the obligations of sections (h) and (i) of this rule, though subsequently determined to have been erroneous, does not constitute a violation of this rule.

Comment

[1] A prosecutor has the responsibility of a minister of justice and not simply that of an advocate. This responsibility carries with it specific obligations to see that the defendant is accorded procedural justice, and that guilt is decided upon the basis of sufficient evidence., and that special precautions are taken to prevent and to rectify the conviction of innocent persons. Precisely how far the prosecutor is required to go in this direction is a matter of debate and varies in different jurisdictions. Many jurisdictions have adopted the ABA Standard of Criminal Justice Relating to Prosecution Function, which in turn are the product of prolonged and careful deliberation by lawyers experienced in both criminal prosecution and defense. Applicable law may require other measures by the prosecutor, and knowing disregard of those obligations or a systematic abuse of prosecutorial discretion could constitute a violation of Rule 8.4.

[2] In some jurisdictions, a defendant may waive a preliminary hearing and thereby lose a valuable opportunity to challenge probable cause. Accordingly, prosecutors should not seek to obtain waivers of preliminary hearings or other important pretrial rights from unrepresented accused persons. Paragraph (c) does not apply, however, to an accused appearing pro se with the approval of the tribunal. Nor does it forbid the lawful questioning of an uncharged suspect who has knowingly waived the rights to counsel and silence.

[3] The exception in paragraph (d) recognizes that a prosecutor may seek an appropriate protective order from the tribunal if disclosure of information to the defense could result in substantial harm to an individual or to the public interest.

[4] Paragraphs (e) and (g) are intended to limit the issuance of lawyer subpoenas in grand jury and other criminal proceedings to those situations in which there is a genuine need to intrude into the client-lawyer relationship. It ensures that a subpoena caused to be issued by a prosecutor to the lawyer requesting evidence about a past or present client of a lawyer will be subject to judicial review upon a timely challenge by the subpoenaed lawyer.

[5] Paragraph (f) supplements Rule 3.6, which prohibits extrajudicial statements that have a substantial likelihood of prejudicing an adjudicatory proceeding. In the context of a criminal prosecution, a prosecutor's extrajudicial statement can create the additional problem of increasing public condemnation of the accused. Although the announcement of an indictment, for example, will necessarily have severe consequences for the accused, a prosecutor can, and should, avoid comments which have no legitimate law enforcement purpose and have a substantial likelihood of increasing public opprobrium of the accused. Nothing in this Comment is intended to restrict the statements which a prosecutor may make which comply with Rule 3.6(b) or 3.6(c).

[6] Like other lawyers, prosecutors are subject to Rules 5.1 and 5.3, which relate to responsibilities regarding lawyers and nonlawyers who work for or are associated with the lawyer's office. Paragraph (f) reminds the prosecutor of the importance of these obligations in connection with the unique dangers of improper extrajudicial statements in a criminal case. In addition, under paragraph (f), a prosecutor has an affirmative duty to make reasonable efforts to prevent law enforcement personnel and others associated with or assisting the prosecution from making extrajudicial statements, even when such persons are not under the direct supervision of the prosecutor.

[7] When a prosecutor knows of new, credible, and material evidence creating a reasonable likelihood that a convicted person in a jurisdiction where the prosecutor does not exercise prosecutorial authority was convicted of a crime that the person did not commit, paragraph (h) requires, within a reasonable time, disclosure to an appropriate court and prosecutorial authority, such as the chief prosecutor of the jurisdiction where the conviction occurred. If the conviction was obtained in a jurisdiction where the prosecutor exercises prosecutorial authority, paragraph (h) requires the prosecutor also, in the absence of court-authorized delay, to, within a reasonable time, (1) disclose that evidence to the defendant's attorney or if the defendant is not represented by counsel to the defendant, (2) move the court in which the defendant was convicted to appoint counsel for the defendant (if the defendant is not already represented by counsel), and (3) request an appropriate authority to investigate whether the defendant was convicted of an offense that the defendant did not commit. For purposes of paragraph (h), "knows" shall be interpreted to mean actual knowledge of the fact in question; indirect or implied knowledge does not trigger the duties set forth in paragraph (h), See Rule 1.0(f).

[7A] Good cause for delaying the notification required by paragraph (h)(2)(i) may include a reasonable concern that such notification would interfere with an ongoing investigation.

[7B] For purposes of this rule, "appropriate court" means the court in which the questioned conviction occurred or any other court with jurisdiction to render post-conviction relief in the matter.

[8] When the requirements of paragraph (i) are met, the prosecutor should support the defendant's efforts to seek a remedy consistent with justice, applicable law, and the circumstances of the case.

 

Oklahoma Rules of Professional Conduct
Okla. Stat. tit. 5
ch. 1, app. 3-A
Article Law Firms and Associations
Rule 5.3. Responsibilities Regarding Nonlawyer Assistants

RULE 5.3 RESPONSIBILITIES REGARDING NONLAWYER ASSISTANTS

With respect to a nonlawyer employed or retained by or associated with a lawyer:

(a) a partner, and a lawyer who individually or together with other lawyers possesses comparable managerial authority in a law firm shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that the person's conduct is compatible with the professional obligations of the lawyer;

(b) a lawyer having direct supervisory authority over the nonlawyer shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer; and

(c) a lawyer shall be responsible for conduct of such a person that would be a violation of the Rules of Professional Conduct if engaged in by a lawyer if:

(1) the lawyer orders or, with the knowledge of the specific conduct, ratifies the conduct involved; or

(2) the lawyer is a partner or has comparable managerial authority in the law firm in which the person is employed, or has direct supervisory authority over the person, and knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action.

Comment

[21] Paragraph (a) requires lawyers with managerial authority within a law firm to make reasonable efforts to establish internal policies and procedures designed to provide to ensure that the firm has in effect measures giving reasonable assurance that nonlawyers in the firm and nonlawyers outside the firm who work on firm matters will act in a way compatible with the professional obligations of the lawyer. with the Rules of Professional Conduct. See Comment [1] to Rule 5.1. Paragraph (b) applies to lawyers who have supervisory authority over the work of a nonlawyer. such nonlawyers within or outside the firm. Paragraph (c) specifies the circumstances in which a lawyer is responsible for the conduct of a nonlawyer such nonlawyers within or outside the firm that would be a violation of the Rules of Professional Conduct if engaged in by a lawyer.

[12] Lawyers generally employ assistants in their practice, including secretaries, investigators, law student interns, and paraprofessionals. Such assistants, whether employees or independent contractors, act for the lawyer in rendition of the lawyer's professional services. A lawyer must assure that such assistants receive appropriate instruction and supervision concerning the ethical aspects of their employment, particularly regarding the obligation not to disclose information relating to representation of the client, and should be responsible for their work product. The measures employed in supervising nonlawyers should take account of the fact that they do not have legal training and are not subject to professional discipline.

Nonlawyers Outside the Firm

[3] A lawyer may use nonlawyers outside the firm to assist the lawyer in rendering legal services to the client. Examples include the retention of an investigative or paraprofessional service, hiring a document management company to create and maintain a database for complex litigation, sending client documents to a third party for printing or scanning, and using an Internet-based service to store client information. When using such services outside the firm, a lawyer must make reasonable efforts to ensure that the services are provided in a manner that is compatible with the lawyer's professional obligations. The extent of this obligation will depend upon the circumstances, including the education, experience and reputation of the nonlawyer; the nature of the services involved; the terms of any arrangements concerning the protection of client information; and the legal and ethical environments of the jurisdictions in which the services will be performed, particularly with regard to confidentiality. See also Rules 1.1 (competence), 1.2 (allocation of authority), 1.4 (communication with client), 1.6 (confidentiality), 5.4(a) (professional independence of the lawyer), and 5.5(a) (unauthorized practice of law). When retaining or directing a nonlawyer outside the firm, a lawyer should communicate directions appropriate under the circumstances to give reasonable assurance that the nonlawyer's conduct is compatible with the professional obligations of the lawyer.

[4] Where the client directs the selection of a particular nonlawyer service provider outside the firm, the lawyer ordinarily should agree with the client concerning the allocation of responsibility for monitoring as between the client and the lawyer. See Rule 1.2. When making such an allocation in a matter pending before a tribunal, lawyers and parties may have additional obligations that are a matter of law beyond the scope of these Rules.

 

Oklahoma Rules of Professional Conduct
Okla. Stat. tit. 5
ch. 1, app. 3-A
Article Information About Legal Services
Rule 7.1. Communications Concerning a Lawyer's Services

RULE 7.1 COMMUNICATIONS CONCERNING A LAWYER'S SERVICES

A lawyer shall not make a false or misleading communication about the lawyer or the lawyer's services. A communication is false or misleading if it contains a material misrepresentation of fact or law, or omits a fact necessary to make the communication considered as a whole not materially misleading.

Comment

[1] This Rule governs all communications about a lawyer's services, including advertising permitted by Rule 7.2. Whatever means are used to make known a lawyer's services, statements about them must be truthful.

[2] Truthful statements that are misleading are also prohibited by this Rule. A truthful statement is misleading if it omits a fact necessary to make the lawyer's communication considered as a whole not materially misleading. A truthful statement is also misleading if there is a substantial likelihood that it will lead a reasonable person to formulate a specific conclusion about the lawyer or the lawyer's services for which there is no reasonable factual foundation.

[3] An advertisement that truthfully reports a lawyer's achievements on behalf of clients or former clients may be misleading if presented so as to lead a reasonable person to form an unjustified expectation that the same results could be obtained for other clients in similar matters without reference to the specific factual and legal circumstances of each client's case. Similarly, an unsubstantiated comparison of the lawyer's services or fees with the services or fees of other lawyers may be misleading if presented with such specificity as would lead a reasonable person to conclude that the comparison can be substantiated. The inclusion of an appropriate disclaimer or qualifying language may preclude a finding that a statement is likely to create unjustified expectations or otherwise mislead the public. a prospective client.

[4] See also Rule 8.4(e) for the prohibition against stating or implying an ability to influence improperly a government agency or official or to achieve results by means that violate the Rules of Professional Conduct.

 

Oklahoma Rules of Professional Conduct
Okla. Stat. tit. 5
ch. 1, app. 3-A
Article Information About Legal Services
Rule 7.2. Advertising

RULE 7.2 ADVERTISING

(a) Subject to the requirements of Rules 7.1 and 7.3, a lawyer may advertise services through written, recorded or electronic communication, including public media.

(b) A lawyer shall not give anything of value, directly or indirectly, to a person for recommending the lawyer's services except that a lawyer may

(1) pay the reasonable costs of advertisements or communications permitted by this Rule;

(2) pay the usual charges of a legal service plan or a not-for-profit or qualified lawyer referral service. A qualified lawyer referral service is a lawyer referral service that has been approved by an appropriate regulatory authority:

(3) pay for a law practice in accordance with Rule 1.17; and

(4) without paying anything solely for the referral, refer clients to another lawyer or a nonlawyer professional pursuant to an agreement not otherwise prohibited under these Rules that provides for the other person to refer clients or customers to the lawyer, if

(i) the reciprocal referral agreement is not exclusive, and
(ii) the client is informed of the existence and nature of the agreement.

(c) Any communication made pursuant to this rule shall include the name and office address of at least one lawyer or law firm responsible for its content.

Comment

[1] To assist the public in learning about and obtaining legal services, lawyers should be allowed to make known their services not only through reputation but also through organized information campaigns in the form of advertising. Advertising involves an active quest for clients, contrary to the tradition that a lawyer should not seek clientele. However, the public's need to know about legal services can be fulfilled in part through advertising. This need is particularly acute in the case of persons of moderate means who have not made extensive use of legal services. The interest in expanding public information about legal services ought to prevail over considerations of tradition. Nevertheless, advertising by lawyers entails the risk of practices that are misleading or overreaching.

[2] This Rule permits public dissemination of information concerning a lawyer's name or firm name, address, email address, website, and telephone number; the kinds of services the lawyer will undertake; the basis on which the lawyer's fees are determined, including prices for specific services and payment and credit arrangements; a lawyer's foreign language ability; names of references and, with their consent, names of clients regularly represented; and other information that might invite the attention of those seeking legal assistance.

[3] Questions of effectiveness and taste in advertising are matters of speculation and subjective judgment. Some jurisdictions have had extensive prohibitions against television and other forms of advertising, against advertising going beyond specified facts about a lawyer, or against "undignified" advertising. Television, the Internet, and other forms of electronic communication are is now one of among the most powerful media for getting information to the public, particularly persons of low and moderate income; prohibiting television, Internet, and other forms of electronic advertising, therefore, would impede the flow of information about legal services to many sectors of the public. Limiting the information that may be advertised has a similar effect and assumes that the bar can accurately forecast the kind of information that the public would regard as relevant. Similarly, electronic media, such as the Internet, can be an important source of information about legal services, and lawful communication by electronic mail is permitted by this Rule. But see Rule 7.3(a) for the prohibition against the a solicitation of a prospective client through a real-time electronic exchange initiated by the lawyer. that is not initiated by the prospective client.

[4] Neither this Rule nor Rule 7.3 prohibits communications authorized by law, such as notice to members of a class in class action litigation.

Paying Others to Recommend a Lawyer 

[5] Except as permitted under paragraphs (b)(1)-(b)(4), Llawyers are not permitted to pay others for channeling professional work. recommending the lawyer's services or for channeling professional work in a manner that violates Rule 7.3. A communication contains a recommendation if it endorses or vouches for a lawyer's credentials, abilities, competence, character, or other professional qualities. Paragraph (b)(1), however, allows a lawyer to pay for advertising and communications permitted by this Rule, including the costs of print directory listings, on-line directory listings, newspaper ads, television and radio air time, domain-name registrations, sponsorship fees, banner ads, Internet-based advertisements, and group advertising. A lawyer may compensate employees, agents and vendors who are engaged to provide marketing or client-development services, such as publicists, public-relations personnel, business-development staff and website designers. Moreover, a lawyer may pay others for generating client leads, such as Internet-based client leads, as long as the lead generator does not recommend the lawyer, any payment to the lead generator is consistent with Rules 1.5(e) (division of fees) and 5.4 (professional independence of the lawyer), and the lead generator's communications are consistent with Rule 7.1 (communications concerning a lawyer's services). To comply with Rule 7.1, a lawyer must not pay a lead generator that states, implies, or creates a reasonable impression that it is recommending the lawyer, is making the referral without payment from the lawyer, or has analyzed a person's legal problems when determining which lawyer should receive the referral. See also Rule 5.3 for the (duties of lawyers and law firms with respect to the conduct of nonlawyers); Rule 8.4(a) (duty to avoid violating the Rules through the acts of another). who prepare marketing materials for them.

[6] A lawyer may pay the usual charges of a legal service plan or a not-for-profit or qualified lawyer referral service. A legal service plan is a prepaid or group legal service plan or a similar delivery system that assists people who seek prospective clients to secure legal representation. A lawyer referral service, on the other hand, is any organization that holds itself out to the public as a lawyer referral service. Such referral services are understood by laypersons the public to be consumer-oriented organizations that provide unbiased referrals to lawyers with appropriate experience in the subject matter of the representation and afford other client protections, such as complaint procedures or malpractice insurance requirements. Consequently, this Rule only permits a lawyer to pay the usual charges of a not-for-profit or qualified lawyer referral service. A qualified lawyer referral service is one that is approved by an appropriate regulatory authority as affording adequate protections for the public. prospective clients. See, e.g., the American Bar Association's Model Supreme Court Rules Governing Lawyer Referral Services and Model Lawyer Referral and Information Service Quality Assurance Act (requiring that organizations that are identified as lawyer referral services (i) permit the participation of all lawyers who are licensed and eligible to practice in the jurisdiction and who meet reasonable objective eligibility requirements as may be established by the referral service for the protection of the public prospective clients; (ii) require each participating lawyer to carry reasonably adequate malpractice insurance; (iii) act reasonably to assess client satisfaction and address client complaints; and (iv) do not make referrals prospective clients to lawyers who own, operate or are employed by the referral service.)

[7] A lawyer who accepts assignments or referrals from a legal service plan or referrals from a lawyer referral service must act reasonably to assure that the activities of the plan or service are compatible with the lawyer's professional obligations. See Rule 5.3. Legal service plans and lawyer referral services may communicate with prospective clients the public, but such communication must be in conformity with these Rules. Thus, advertising must not be false or misleading, as would be the case if the communications of a group advertising program or a group legal services plan would mislead the public prospective clients to think that it was a lawyer referral service sponsored by a state agency or bar association. Nor could the lawyer allow in-person, telephonic, or real-time contacts that would violate Rule 7.3.

[8] A lawyer also may agree to refer clients to another lawyer or a nonlawyer professional, in return for the undertaking of that person to refer clients or customers to the lawyer. Such reciprocal referral agreements must not interfere with the lawyer's professional judgment as to making referrals or as to providing substantive legal services. See Rules 2.1 and 5.4(c). Except as provided in Rule 1.5(e), a lawyer who receives referrals from a lawyer or nonlawyer professional must not pay anything solely for the referral, but the lawyer does not violate paragraph (b) of this Rule by agreeing to refer clients to the other lawyer or nonlawyer professional, so long as the reciprocal referral agreement is not exclusive and the client is informed of the referral agreement. For the purposes of Rule 7.2(b)(4), such reciprocal referral agreements do not constitute a prohibited thing of value. Conflicts of interest created by such agreements are governed by Rule 1.7. Reciprocal referral agreements should not be of indefinite duration and should be reviewed periodically to determine whether they comply with these Rules. This Rule does not restrict referrals or divisions of revenues or net income among lawyers within firms comprised of multiple entities.

Oklahoma Modification

The Oklahoma version of Rule 7.2(b)(4) adds language to the text and Comment to underscore that reciprocal referral agreements do not constitute a prohibited thing of value. The Oklahoma version retains the preexisting Oklahoma formulation extending the prohibition of Rule 7.2(b) to both direct and indirect things of value.

 

Oklahoma Rules of Professional Conduct
Okla. Stat. tit. 5
ch. 1, app. 3-A
Article Information About Legal Services
Rule 7.3. Direct Contact With Prospective Clients

RULE 7.3 DIRECT CONTACT WITH PROSPECTIVE SOLICITATION OF CLIENTS

(a) A lawyer shall not by in-person, live telephone or real-time electronic contact, solicit professional employment from a prospective client when a significant motive for the lawyer's doing so is the lawyer's pecuniary gain, unless the person contacted:

(1) is a lawyer, or

(2) has a family, close personal, or prior professional relationship with the lawyer.

(b) A lawyer shall not solicit professional employment from a prospective client by written, recorded or electronic communication or by in-person, telephone or real-time electronic contact even when not otherwise prohibited by paragraph (a), if:

(1) the prospective client target of the solicitation has made known to the lawyer a desire not to be solicited by the lawyer; or

(2) the solicitation involves coercion, duress or harassment.

(c) Every written, recorded or electronic communication from a lawyer soliciting professional employment from anyone a prospective client known to be in need of legal services in a particular matter shall include the words "Advertising Material" on the outside of the envelope, if any, and at the beginning and ending of any recorded or electronic communication, unless the recipient of the communication is a person specified in paragraphs (a)(1) or (a)(2).

(d) Notwithstanding the prohibitions in paragraph (a), a lawyer may participate with a prepaid or group legal service plan operated by an organization not owned or directed by the lawyer that uses in-person or telephone contact to solicit memberships or subscriptions for the plan from persons who are not known to need legal services in a particular matter covered by the plan.

Comment

[1] A solicitation is a targeted communication initiated by the lawyer that is directed to a specific person and that offers to provide, or can reasonably be understood as offering to provide, legal services. In contrast, a lawyer's communication typically does not constitute a solicitation if it is directed to the general public, such as through a billboard, an Internet banner advertisement, a website or a television commercial, or if it is in response to a request for information or is automatically generated in response to Internet searches.

[12] There is a potential for abuse when a solicitation involves inherent in direct in-person, live telephone or real-time electronic contact by a lawyer with someone a prospective client known to need legal services. These forms of contact between a lawyer and a prospective client subject the layperson a person to the private importuning of the trained advocate in a direct interpersonal encounter. The person prospective client, who may already feel overwhelmed by the circumstances giving rise to the need for legal services, may find it difficult fully to evaluate all available alternatives with reasoned judgment and appropriate self-interest in the face of the lawyer's presence and insistence upon being retained immediately. The situation is fraught with the possibility of undue influence, intimidation, and over-reaching.

[23] This potential for abuse inherent in direct in-person, live telephone or real-time electronic solicitation of prospective clients justifies its prohibition, particularly since lawyers have advertising and written and recorded communication permitted under Rule 7.2 offer alternative means of conveying necessary information to those who may be in need of legal services. Advertising and written and recorded In particular, communications which may be can be mailed or autodialed or transmitted by email or other electronic means that do not involve real-time contact and do not violate other laws governing solicitations. These forms of communications and solicitations make it possible for the public a prospective client to be informed about the need for legal services, and about the qualifications of available lawyers and law firms, without subjecting the prospective client the public to direct in-person, telephone or real-time electronic persuasion that may overwhelm the client's a person's judgment.

[34] The use of general advertising and written, recorded or electronic communications to transmit information from lawyer to the public prospective client, rather than direct in-person, live telephone or real-time electronic contact, will help to assure that the information flows cleanly as well as freely. The contents of advertisements and communications permitted under Rule 7.2 can be permanently recorded so that they cannot be disputed and may be shared with others who know the lawyer. This potential for informal review is itself likely to help guard against statements and claims that might constitute false and misleading communications, in violation of Rule 7.1. The contents of direct in-person, live telephone or real-time electronic conversations between a lawyer and a prospective client contact can be disputed and may not be subject to third-party scrutiny. Consequently, they are much more likely to approach (and occasionally cross) the dividing line between accurate representations and those that are false and misleading.

[45] There is far less likelihood that a lawyer would engage in abusive practices against an individual who is a former client, or a person with whom the lawyer has close personal or family relationship, or in situations in which the lawyer is motivated by considerations other than the lawyer's pecuniary gain. Nor is there a serious potential for abuse when the person contacted is a lawyer. Consequently, the general prohibition in Rule 7.3(a) and the requirements of 7.3(c) are not applicable in those situations. Also, paragraph (a) is not intended to prohibit a lawyer from participating in constitutionally protected activities of public or charitable legal-service organizations or bona fide political, social, civic, fraternal., employee or trade organizations whose purposes include providing or recommending legal services to its their members or beneficiaries.

[56] But even permitted forms of solicitation can be abused. Thus, any solicitation which contains information which is false or misleading within the meaning of Rule 7.1, which involves coercion, duress or harassment within the meaning of Rule 7.3(c)(2), or which involves contact with a prospective client someone who has made known to the lawyer a desire not to be solicited by the lawyer within the meaning of Rule 7.3(b)(1) is prohibited. Moreover, if after sending a letter or other communication to a client as permitted by Rule 7.2 the lawyer receives no response, any further effort to communicate with the recipient of the communication prospective client may violate the provisions of Rule 7.3(b).

[67] This Rule is not intended to prohibit a lawyer from contacting representatives of organizations or groups that may be interested in establishing a group or prepaid legal plan for their members, insureds, beneficiaries or other third parties for the purpose of informing such entities of the availability of and details concerning the plan or arrangement which the lawyer or lawyer's firm is willing to offer. This form of communication is not directed to people who are seeking legal services for themselves. a prospective client. Rather, it is usually addressed to an individual acting in a fiduciary capacity seeking a supplier of legal services for others who may, if they choose, become prospective clients of the lawyer. Under these circumstances, the activity which the lawyer undertakes in communicating with such representatives and the type of information transmitted to the individual are functionally similar to and serve the same purpose as advertising permitted under Rule 7.2.

[78] The requirement in 7.3(c) that certain communications be marked "Advertising Material" does not apply to communications sent in response to requests of potential clients or their spokespersons or sponsors. General announcements by lawyers, including changes in personnel or office location, do not constitute communications soliciting professional employment from a client known to be in need of legal services within the meaning of this Rule.

[89] Paragraph (d) of this Rule permits a lawyer to participate with an organization which uses personal contact to solicit members for its group or prepaid legal service plan, provided that the personal contact is not undertaken by any lawyer who would be a provider of legal services through the plan. The organization must not be owned by or directed (whether as manager or otherwise) by any lawyer or law firm that participates in the plan. For example, paragraph (d) would not permit a lawyer to create an organization controlled directly or indirectly by the lawyer and use the organization for the in-person or telephone solicitation of legal employment of the lawyer through memberships in the plan or otherwise. The communication permitted by these organizations also must not be directed to a person known to need legal services in a particular matter but is to be designed to inform potential plan members generally of another means of affordable legal services. Lawyers who participate in a legal service plan must reasonably assure that the plan sponsors are in compliance with Rules 7.1, 7.2 and 7.3(b). See 8.4(a).





 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 Title 5. Attorneys and the State Bar
 Cite
Name
Level

 5 O.S. Rule 1.18, Duties To Prospective Client
Cited
 5 O.S. Rule 3.8, Special Responsibilities of a Prosecutor
Cited
 5 O.S. Rule 5.3, Responsibilities Regarding Nonlawyer Assistants
Cited
 5 O.S. Rule 7.1, Communications Concerning a Lawyer's Services
Cited
 5 O.S. Rule 7.2, Advertising
Cited
 5 O.S. Rule 7.3, Solicitation of Clients
Cited


 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 None Found.